**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:17-CV-94-JVB-JEM |
| | ) | |
| PURDUE UNIVERSITY, MITCHELL ELIAS | ) | |
| DANIELS, ALYSA CHRISTMAS ROLLOCK, | ) | |
| KATHERINE L. SERMERSHEIM, MONICA | ) | |
| BLOOM, ERIN OLIVER, and JACOB | ) | |
| AMBERGER, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

COMES NOW Plaintiff, Jane Doe, by and through counsel, Andrew J. Spica and John Mark Vouga, and hereby complains against the Defendants and requests a trial by jury as follows:

## INTRODUCTION

1.     This cause of action arises from the Defendants' deliberately indifferent response to a student-on-student sexual assault on school premises.

2.     Defendants' failure to promptly and adequately respond to the assault subjected Plaintiff to a hostile educational environment, and denied her equal access to educational opportunities and programs, based on her gender.

3.     Defendants' failure to promptly and adequately respond to the assault further denied Plaintiff of her constitutional right to due process, as she was denied the due process of law in the Defendants' inadequate investigation of, and inadequate response to, the assault.

4.     This action alleges violations of the Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.* ("Title IX"), and 42 U.S.C. §1983, for the denial of due process and of the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States of America ("U.S. Constitution").

## JURISDICTION AND VENUE

5.     This action seeks to vindicate Plaintiff's rights under the Constitution and laws of the United States to due process, to equal protection of the laws, and to be free from gender discrimination in a federally funded educational program or activity, pursuant to both Title IX and the Fourteenth Amendment to the U.S. Constitution.

6.     Jurisdiction is conferred upon this court by 28 U.S.C. §§1331 and 1343, as this action seeks redress for violations of Plaintiff's rights under the Constitution and laws of the United States.

7.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

8.     Venue is proper to the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. §1391(b) and (c), as the judicial district in which all relevant events and omissions occurred, and in which at least one of the Defendants' maintains an office and resides.

## PARTIES

9.     At all times relevant hereto, Plaintiff Jane Doe was a student enrolled at Purdue University, a resident of the State of Indiana, and a citizen of the United States of America.

10.     At all times relevant hereto, Defendant Mitchell Elias Daniels was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the

2

color of state law in his capacity as President of Purdue University, employed by Purdue University. On information and belief, Defendant Daniels exercised and/or delegated his final supervisory and/or decision-making power to Defendants Rollock, Sermersheim, Bloom, and others. Defendant Daniels also supervised and/or trained Defendants Rollock, Sermersheim, Bloom, Oliver, and Amberger. Defendant Daniels is sued in his individual and official capacities.

11.     At all times relevant hereto, Defendant Alyssa Christmas Rollock was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the color of state law in her capacity as Vice President of Ethics and Compliance at Purdue University, employed by Purdue University. On information and belief, Defendant Rollock exercised and/or delegated supervisory and/or final decision-making power delegated by Defendants Purdue University and Daniels. Defendant Rollock also supervised and/or trained Defendants Sermersheim, Bloom, Oliver, and Amberger. Defendant Rollock is sued in her individual and official capacities.

12.     At all times relevant hereto, Defendant Katherine L. Sermersheim was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the color of state law in her capacity as Dean of Students and Title IX Coordinator at Purdue University, employed by Purdue University. On information and belief, Defendant Sermersheim exercised and/or delegated supervisory and/or final decision-making power delegated by Defendants Purdue University, Daniels, and Rollock. Defendant Sermersheim also supervised and/or trained Defendants Bloom, Oliver, and Amberger. Defendant Sermersheim is sued in her individual and official capacities.

13.     At all times relevant hereto, Defendant Monica Bloom was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the color of state law in her capacity as Title IX Coordinator, Director of the Center for Advocacy, Response, and Education, and Director of the Office of Institutional Equity at Purdue University, employed by Purdue University. On information and belief, Defendant Bloom exercised and/or delegated supervisory and/or final decision-making power delegated by Defendants Purdue University, Daniels, Rollock, and Sermersheim. Defendant Bloom also supervised and/or trained Defendants Oliver and Amberger. Defendant Bloom is sued in her individual and official capacities.

14.     At all times relevant hereto, Defendant Erin Oliver was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the color of state law in her capacity as Associate Director of the Office of Institutional Equity at Purdue University, employed by Purdue University. Defendant Oliver is sued in her individual and official capacities.

15.     At all times relevant hereto, Defendant Jacob Amberger was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the color of state law in his capacity as Investigator for the Office of Institutional Equity at Purdue University, employed by Purdue University. Defendant Amberger is sued in his individual and official capacities.

16.     At all times relevant hereto, Defendant Purdue University ("Defendant Purdue") was a state university authorized under the laws of the State of Indiana to maintain a public university, for which it bears ultimate responsibility. Defendant Purdue assumes risks incidental to the maintenance and operation of a public university and the employment of agents within the

4

university. Defendant Purdue is a recipient of federal funding and is subject to federal and constitutional law.

17.     At all times relevant hereto, Defendant Purdue, either directly or through powers delegated to its agents, hired, employed, trained, supervised, and controlled Defendants individually named herein.

18.     Defendant Purdue and Defendant Daniels are properly sued directly under 42 U.S.C. §1983 for their own and delegated deliberately indifferent, unconstitutional decisions, policies, practices, habits, customs, usages, training, supervision, ratification, and intentional failures which resulted in the constitutional rights violations complained of herein.

19.     Defendant Purdue is also properly sued under 42 U.S.C. §1983 for the delegated, supervisory functions and/or final decisions of Defendants Daniels, Rollock, Sermersheim, and Bloom, in their official capacities as officials of Purdue University, and any delegated final decision makers with respect to the deliberately indifferent unconstitutional decisions, policies, practices, habits, customs, usages, training, supervision, ratification, and intentional failures which resulted in the constitutional rights violations complained of herein.

## STATEMENT OF FACTS

20.     Plaintiff incorporates and realleges by reference paragraphs 1 through 19 as if they were fully set forth herein.

21.     On December 5, 2015, Plaintiff Jane Doe ("Plaintiff") was the victim of an act of sexual violence, perpetrated against her in her dormitory by another undergraduate student, Jack Roe.

22.     At all times relevant hereto, both Plaintiff and Jack Roe were enrolled as students at Purdue University ("Purdue").

5

23.     On December 5, 2015, Plaintiff attended an off-campus party located at Jack Roe's residence.

24.     The aforementioned party was sponsored, whether formally or informally, by members of Purdue University's Marching Band.

25.     Following the party, Plaintiff returned to her dormitory, McCutcheon Hall, showered, and returned to her room.

26.     Subsequently, Plaintiff learned that Jack Roe, another undergraduate student at Purdue University, had also walked from the aforementioned party to Plaintiff's dormitory.

27.     Jack Roe entered Plaintiff's dorm room with her consent, but proceeded to sexually assault Plaintiff.

28.     While in Plaintiff's dorm room, Jack Roe held Plaintiff down and, contrary to her express command not to do so, forced Plaintiff to engage in sexual intercourse against her will.

29.     Prior to the attack by Jack Roe, Plaintiff had never engaged in sexual intercourse.

30.     The following day, December 6, 2015, Plaintiff broke down during a practice for Purdue University's crew team and reported the sexual assault to her teammates.

31.     On December 7, 2015, Plaintiff visited the Purdue University Student Health Center ("PUSH").

32.     During her visit to PUSH on December 7, 2015, Plaintiff reported the sexual assault to an assistant nurse practitioner.

33.     On information and belief, the assistant nurse practitioner to whom Plaintiff reported her sexual assault was Cynthia Modlin Adams, A.N.P. ("Ms. Adams").

34.     At all times relevant hereto, Ms. Adams was employed by Purdue University and was acting within the scope of her employment.

35.     On information and belief, the report of sexual assault was also reviewed by nurse Karla Sigo, R.N. ("Ms. Sigo").

36.     At all times relevant hereto, Ms. Sigo was employed by Purdue University and was acted within the scope of her employment.

37.     In response to Plaintiff's report of being sexually assaulted, Ms. Adams told Plaintiff she needed to "make better decisions when she is drinking."

38.     Ms. Adams's inappropriate and discriminatory response to Plaintiff's report of sexual assault was made despite the fact that Plaintiff also reported that she was not intoxicated at the time of the assault.

39.     As a result of the inappropriate and discriminatory response from Purdue's PUSH employees, Plaintiff was forced to have a friend drive her to a local, West Lafayette Hospital to address her health concerns arising from the assault.

40.     On or about December 8, 2015, Plaintiff emotionally broke down once again in her dormitory, McCutcheon Hall.

41.     On or about December 8, 2015, Plaintiff was approached by an employee of the residence hall who inquired as to the reason for Plaintiff's emotional breakdown.

42.     On or about December 8, 2015, Plaintiff reported the sexual assault, and her suicidal ideations as a result of the sexual assault, to a Purdue University residence hall employee, whose identity is unknown at this time.

43.     On information and belief, the residence hall employee to whom Plaintiff reported her sexual assault on or about December 8, 2015, created an incident report documenting the reported sexual assault.

44.     On information and belief, the residence hall employee to whom Plaintiff reported her sexual assault on or about December 8, 2015, failed to immediately report the sexual assault to Purdue University's Office of Institutional Equity.

45.     On information and belief, the residence hall employee to whom Plaintiff reported her sexual assault on or about December 8, 2015, failed to report the sexual assault to law enforcement.

46.     On information and belief, the residence hall employee to whom Plaintiff reported her sexual assault on or about December 8, 2015, failed to advise Plaintiff of her right to report the sexual assault to law enforcement and failed to offer assistance to Plaintiff in such reporting.

47.     On December 9, 2015, Plaintiff was contacted by Kasey Richardson ("Ms. Richardson"), Assistant Director of Purdue University's Center for Advocacy, Response, and Education ("CARE").

48.     On information and belief, Plaintiff was never informed of her option to contact local police, was never offered any assistance in contacting law enforcement, and law enforcement was never notified of the attack by Ms. Richardson, the residence hall employee, or any other employee of Purdue University with knowledge of the sexual assault.

49.     On December 9, 2015, Plaintiff advised Ms. Richardson that she was having difficulty focusing in her classes due to the emotional trauma she was suffering.

50.     Ms. Richardson determined it would be in Plaintiff's best interests to leave campus as quickly as possible.

51.     Consequently, Ms. Richardson attempted to secure academic accommodations for Plaintiff with regard to her final exams.

52.     Nonetheless, Plaintiff was denied academic accommodations with respect to at least one (1) of her classes,

53.     Plaintiff's grades during the Fall Semester 2015 suffered as a result of Purdue's failure to secure academic accommodations.

54.     During the winter break, Plaintiff returned home. While at home, Plaintiff sought and received treatment with a rape crisis counselor.

55.     At all times relevant hereto, no rape crisis counselors were available to students through Purdue University.

56.     At all times relevant hereto, Purdue failed to offer, provide, or assist Plaintiff in obtaining the medical or psychological services she required as a result of the sexual assault.

57.     On February 1, 2016, shortly after returning from winter break, Plaintiff contacted Ms. Richardson and requested assistance in filing a formal complaint with Purdue's Office of Institutional Equity.

58.     For reasons unknown at this time, an investigation was not initiated by Purdue's Office of Institutional Equity until February 16, 2016, over two (2) weeks after Plaintiff requested assistance in reporting the sexual assault.

59.     Following Plaintiff's formal complaint, Purdue's Dean of Students, Katherine Sermersheim ("Ms. Sermersheim"), assigned Jacob Amberger ("Mr. Amberger") and Erin Oliver ("Ms. Oliver") to investigate Plaintiff's formal complaint.

60.     In response to Plaintiff's complaint, Jack Roe submitted a written response to Defendant Amberger and Defendant Oliver.

61.     Jack Roe's initial response to Defendant Amberger and Defendant Oliver differed significantly from Plaintiff's version of events from the evening of the assault.

62.     Plaintiff was permitted to review Jack Roe's initial response, and Plaintiff was interviewed by Defendant Amberger and Defendant Oliver.

63.     Subsequently, Jack Roe recanted on his original response once he realized his bank statements and other evidence did not support his initial version of events.

64.     Jack Roe met with Defendant Amberger and Defendant Oliver and gave a second, very different version of events that aligned much more closely with Plaintiff's version of events from the evening of the assault.

65.     On or about April 22, 2016, Plaintiff attended a final panel meeting to review her complaint.

66.     During the final panel meeting, Plaintiff was questioned by Defendant Sermersheim and three faculty members, whose identities are not known at this time.

67.     During the final panel meeting, Plaintiff was treated as though she was to blame for the assault, and was asked a series of accusatory questions including a question as to what she was wearing the night of the assault.

68.     Defendant Amberger and Defendant Oliver concluded that there were no credibility issues with respect to either Plaintiff or Jack Roe, despite the fact that the two gave directly conflicting accounts of what occurred before and during the assault.

69.     Defendant Amberger and Defendant Oliver acknowledged that Plaintiff's reported the assault immediately and remained consistent in her story from the beginning.

70.     Defendant Amberger and Defendant Oliver acknowledged that Plaintiff's emotional response appeared genuine and sincere.

71.     Despite this finding, Defendant Amberger and Defendant Oliver went out of their way to explain away Jack Roe's conflicting accounts of the night in question.

72.     The report submitted by Defendant Amberger and Defendant Oliver unfairly favors Jack Roe over Plaintiff.

73.     The report submitted by Defendant Amberger and Defendant Oliver actively defends the inconsistent stories provided by Jack Roe and, ultimately, adopts Jack Roe's version of event, despite the fact that he admits to being intoxicated, admits to a vague recollection of the evening, and openly denied significant details of the evening in his initial response.

74.     The report submitted by Defendant Amberger and Defendant Oliver faults Plaintiff for the sexual assault based on Jack Roe's allegations of a prior, flirtatious relationship.

75.     Defendant Sermersheim and the final panel also found in Jack Roe's favor, based in large part, on Jack Roe's allegations of a prior flirtatious relationship.

76.     Purdue's investigation was deliberately indifferent to the sexual assault that was committed against Plaintiff.

77.     Purdue's investigation discriminated against Plaintiff based her gender, by presuming that Plaintiff somehow invited Jack Roe's assault.

78.     Purdue's investigation discriminated against Plaintiff based on her gender by focusing primarily on Plaintiff's conduct and alleged past behaviors in trying to justify what happened to her the night of the assault.

79.     Ultimately, from the moment Plaintiff report to PUSH, to the moment Defendants Amberger, Oliver, and Sermersheim made their findings, Plaintiff was blamed for the sexual assault she suffered on December 5, 2015.

80.     On May 2, 2016, Defendant Sermersheim found that Jack Roe had not violated Purdue's anti-harassment policy.

81. On May 5, 2016, for the first time, Plaintiff was permitted to review the report created by Defendant Amberger and Defendant Oliver.

82. On May 5, 2016, for the first time, Plaintiff was made aware that Jack Roe had given a second statement to Defendant Amberger and Defendant Oliver.

83. Plaintiff was never given notice that Jack Roe had submitted a revised statement to the investigators.

84. Plaintiff was never given an opportunity to review, address, challenge, or respond to Jack Roe's revised version of events.

85. Plaintiff was never given an opportunity to review the investigator's report prior the panel meeting, which was her final opportunity to be heard.

86. At all stages of the investigation, Plaintiff was denied equal access to the information collected by Defendants Amberger and Oliver.

87. At all stages of the investigation, Plaintiff was denied due process, a meaningful opportunity to view and respond to the evidence, and a meaningful opportunity to be heard.

88. On or about May 12, 2016, Plaintiff submitted an appeal to Purdue's Vice President of Ethics and Compliance, Alysa Christmas Rollock ("Defendant Rollock").

89. Plaintiff's appeal included a detailed response to Jack Roe's newly discovered, second story concerning what occurred on the night of the assault.

90. Plaintiff's appeal detailed the problems in the underlying investigation, including the clear bias by Defendants Amberger and Oliver.

91. Plaintiff's appeal addressed the bias she faced from the final panel in the form of the accusatory questions she was asked.

92.     Plaintiff further notified Defendant Rollock that she was afraid to participate in the Marching Band due to ongoing concerns over Jack Roe's continued involvement, despite his graduation.

93.     Plaintiff's appeal complained of a lack of communication regarding the progress and timeline of the investigation.

94.     Plaintiff was told to expect a determination on her appeal within ten (10) days from the date her appeal was submitted.

95.     On May 24, 2016, Plaintiff contacted Defendant Rollock by e-mail, inquiring as to whether there was a determination regarding her appeal. Defendant Rollock did not respond.

96.     On May 25, 2016 Plaintiff again contacted Defendant Rollock by e-mail, inquiring as to whether there was a determination regarding her appeal. Defendant Rollock did not respond.

97.     On May 26, 2016, Plaintiff contacted Purdue University President, Mitchell Elias Daniels ("Defendant Daniels"), outlined her complaints relating to the Office of Institutional Equity, the bias she faced from Defendants Amberger, Oliver, and Sermersheim, and the lack of response form Defendant Rollock.

98.     Defendant Daniels never responded to Plaintiff's complaint.

99.     On May 27, 2016, Defendant Rollock issued a determination denying Plaintiff's appeal.

100.    Defendant Rollock failed to address any of Plaintiff's substantive concerns in her determination.

101.    Defendant Rollock summarily denied Plaintiff's appeal, and failed to address, correct, or explain the numerous issues raised therein.

102.    During the investigation, Plaintiff advised Kasey Richardson that she was having difficulty with her academics due to the emotional trauma of the assault and the investigation.

103.    During the investigation, Plaintiff requested academic accommodations to assist with the difficulty she was having,

104.    Plaintiff was denied the academic accommodations she requested.

105.    During the investigation, Plaintiff reported to Kasey Richardson that she was having financial difficulties due to a bill she was receiving from the hospital in connection with the underlying assault.

106.    Plaintiff never received assistance from Purdue in paying for her medical expenses incurred as a result of this assault despite her request for accommodation.

107.    During the investigation and afterwards, Plaintiff informed Kasey Richardson that she felt excluded from Purdue's marching band due to Jack Roe's continued involvement, despite the fact that he was a graduating senior.

108.    Jack Roe was, at all times relevant hereto, a leader in Purdue's Marching band, as the band's drum major.

109.    Purdue's Marching Band has a practice of allowing former band members to return to assist with the Marching band even after they have graduated.

110.    Jack Roe's continued involvement in the Marching band, both during the 2015-2016 academic school year and beyond Jack Roe's graduation, effectively excluded Plaintiff from participation in the marching band.

111.    Plaintiff expressed her feeling of exclusion from the Marching Band to Kasey Richardson.

14

112.     Purdue made no accommodations to assist Plaintiff in participating in the Marching Band, as had been her longtime aspiration.

113.     On June 2, 2016, Plaintiff filed a formal complaint with the United States Department of Education's Officer for Civil Rights ("OCR").

114.     On June 2, 2016, Plaintiff filed a notice of tort claim, along with a request to preserve evidence, with Purdue University and the Attorney General of the State of Indiana.

115.     On August 5, 2016, OCR opened an investigation into Plaintiff's formal complaint of discrimination against Purdue University.

116.     OCR's investigation is ongoing, and no determination has been made to date regarding Plaintiff's complaint of discrimination.

117.     During the Fall Semester 2016, after Jack Roe had graduated, Plaintiff attended a job fair on campus through Purdue's engineering program where she was faced with her harasser. Plaintiff's emotional trauma was relived, and she had to leave the job fair and forego the opportunities at said job fair.

118.     As a proximate result of the Defendants' deliberate indifference to Jack Roe's sexual assault of Plaintiff, Plaintiff has suffered, and continues to suffer, damages including, without limitation, medical expenses, physical pain and suffering, emotional pain and suffering, lost educational opportunities, diminished academic performance, lost scholarships, and a diminished quality of life.

## COUNT I

**20 U.S.C. §1681, *et seq*. – Title IX violation as to Defendant Purdue University for the school's deliberate indifference to sexual harassment**

119.     Plaintiff incorporates and realleges by reference paragraphs 1 through 118 as if they were fully set forth herein.

120. The sexual harassment reported by Plaintiff and articulated herein was so severe, pervasive, and objectively offensive that it deprived Plaintiff of equal access to educational opportunities and programs and the benefits of such opportunities and programs.

121. Defendant Purdue University created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX because:

a. Plaintiff was a member of a protected class;

b. Defendant Purdue had substantial control over the harasser, who was a student enrolled at Purdue University;

c. Defendant Purdue had substantial control over the context in which the harassment occurred, as the harassment occurred on campus in McCutcheon Hall;

d. Plaintiff was subjected to sexual harassment that was so severe, pervasive, and objectively offensive that it deprived Plaintiff of equal access to educational opportunities and programs;

e. Plaintiff was subjected to harassment based on her sex; specifically, sexual harassment in the form of a sexual assault;

f. Defendant Purdue had actual knowledge of the harassment on December 7, 2015; and

g. Defendant Purdue was deliberately indifferent to the known sexual harassment.

122. On December 9, 2015, at least one (1) school official who had the authority to respond to the sexual harassment and/or institute corrective measures had actual knowledge of the harassment and failed to adequately respond.

123. Defendant Purdue had actual knowledge of the sexual assault and the resulting harm to Plaintiff and failed to appropriately respond by extending Plaintiff reasonable

16

accommodations including, without limitation, medical attention, counseling, academic accommodations, and/or reasonable restrictions on contact between the Plaintiff and her harasser after her harasser had graduated.

124.   Defendant Purdue had actual knowledge of the sexual assault and the resulting harm to Plaintiff caused by its failure to investigate and appropriately discipline Plaintiff's attacker in a timely manner and consistent with its own policies and procedures promulgated under federal law.

125.   Defendant Purdue's failure to timely and appropriately respond to the allegation of sexual harassment proximately caused Plaintiff, on the basis of her sex, to be excluded from participation in, and to be denied the benefits of, an educational program and activities in violation of Title IX.

126.   At all times relevant hereto, Defendant Purdue was a recipient of federal funding and was obligated to comply with the requirements of Title IX.

127.   Defendant Purdue persisted in its deliberately indifferent actions and inaction well after it had actual knowledge of the sexual harassment and harm suffered by Plaintiff.

128.   Defendant Purdue engaged in a pattern and practice of behavior designed to favor Plaintiff's attacker, thereby discouraging Plaintiff and other female students from seeking prosecution and further investigation of sexual assaults.

129.   Defendant Purdue's policies, habits, customs, and/or practices constituted disparate treatment of Plaintiff and other female students.

130.   As a direct and proximate result of Defendant Purdue's deliberate indifference, Plaintiff suffered emotional distress and psychological damages, incurred medical expenses,

suffered a loss of opportunity and the benefits of educational programs and activities, incurred other economic damages, and experienced ongoing pain and suffering.

WHEREFORE, Plaintiff prays that this Court enter judgment for the Plaintiff against each of the Defendants herein and grant relief as follows:

A.      A declaration that Defendants' conduct violated Plaintiff's rights under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.*, upon consideration of the evidence adduced at trial or otherwise;

B.      An injunction requiring Defendant Purdue to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs, to fully investigate conduct that may constitute sex-based harassment and/or sexual assault, to appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault, and to mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it;

C.      Award Plaintiff compensatory and consequential damages, including damages for pain and suffering, emotional distress, humiliation, loss of enjoyment of life, medical expenses, loss of educational opportunities, and all other economic losses and unreimbursed expenses on all claims allowed by law in an amount to be determined at trial or otherwise;

D.      Award Plaintiff economic losses on all claims permitted by law;

E.      Award Plaintiff special damages in an amount to be determined at trial or otherwise;

F.      Award Plaintiff punitive damages on all claims as permitted by law against individual Defendants and in an amount to be determined at trial or otherwise;

G.      Award Plaintiff attorneys' fees and the costs associated with this action, including expert witness fees, as permitted by law;

H.      Award Plaintiff pre- and post-judgment interest as permitted by law; and

I.      Award any and all further relief as this Court deems appropriate and equitable, including injunctive and injunctive and declaratory relief as may be required in the interests of justice.

## COUNT II

**20 U.S.C. §1681, *et seq*. – Title IX violation as to Defendant Purdue University for creating and/or subjecting Plaintiff to a hostile educational environment**

131.    Plaintiff incorporates and realleges by reference paragraphs 1 through 130 as if they were fully set forth herein.

132.    The sexual harassment reported by Plaintiff and articulated herein was so severe, pervasive, and objectively offensive that it deprived Plaintiff of equal access to educational opportunities and programs and the benefits of such opportunities and programs.

133.    Defendant Purdue University created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX because:

a.      Plaintiff was a member of a protected class;

b.      Defendant Purdue had substantial control over the harasser, who was a student enrolled at Purdue University;

c.      Defendant Purdue had substantial control over the context in which the harassment occurred, as the harassment occurred on campus in McCutcheon Hall;

d.      Plaintiff was subjected to sexual harassment that was so severe, pervasive, and objectively offensive that it deprived Plaintiff of equal access to educational opportunities and programs;

19

e.      Plaintiff was subjected to harassment based on her sex; specifically, sexual

harassment in the form of a sexual assault;

f.      Defendant Purdue had actual knowledge of the harassment on December 7, 2015;

and

g.      Defendant Purdue was deliberately indifferent to the known sexual harassment.

134.    On December 9, 2015, at least one (1) school official who had the authority to

respond to the sexual harassment and/or institute corrective measures had actual knowledge of

the harassment and failed to adequately respond.

135.    Defendant Purdue had actual knowledge of the sexual assault and the resulting

harm to Plaintiff and failed to appropriately respond by extending Plaintiff reasonable

accommodations including, without limitation, medical attention, counseling, academic

accommodations, and/or reasonable restrictions on contact between the Plaintiff and her harasser

after her harasser had graduated.

136.    Defendant Purdue did not have adequate personnel and/or facilities in place to

adequately respond to the sexual assault against Plaintiff in a timely manner. Plaintiff was forced

to seek medical attention and rape crisis counseling off campus, as Defendant Purdue did not

have appropriate services and/or personnel in place for victims of sexual assault.

137.    Even after Defendant Purdue had actual knowledge of the sexual assault against

Plaintiff, it failed to reasonably assist Plaintiff in obtaining medical attention, rape crisis

counseling, and/or securing reasonable and necessary academic accommodations.

138.    Defendant Purdue's failure to adequately respond to the sexual assault against

Plaintiff and/or to provide reasonable accommodations resulted in harm to the Plaintiff as her

20

grades suffered, her medical and psychological care was unreasonably delayed, and the investigation into her allegations was unreasonably delayed.

139.    Defendant Purdue's lack of appropriate facilities and/or personnel, and its failure to adequately respond to complaints of sexual assault in a timely manner resulted from Defendant Purdue's policies, habits, practices, or customs which had the effect of discouraging reports of sexual assault and favoring harassers. Such policies, practices, customs, and/or habits had a discriminatory and disparate effect on female students.

140.    Defendant Purdue had actual knowledge of the sexual assault and the resulting harm to Plaintiff caused by its failure to investigate and appropriately discipline Plaintiff's attacker in a timely manner and consistent with its own policies and procedures promulgated under federal law.

141.    Defendant Purdue's failure to timely and appropriately respond to the allegation of sexual harassment proximately caused Plaintiff, on the basis of her sex, to be excluded from participation in, and to be denied the benefits of, an educational program and activities in violation of Title IX.

142.    At all times relevant hereto, Defendant Purdue was a recipient of federal funding and was obligated to comply with the requirements of Title IX.

143.    Defendant Purdue persisted in its deliberately indifferent actions and inaction well after it had actual knowledge of the sexual harassment and harm suffered by Plaintiff.

144.    Defendant Purdue engaged in a pattern and practice of behavior designed to favor Plaintiff's attacker, thereby discouraging Plaintiff and other female students from seeking prosecution and further investigation of sexual assaults.

145.    Defendant Purdue's policies, habits, customs, and/or practices constituted disparate treatment of Plaintiff and other female students.

146.    As a direct and proximate result of Defendant Purdue's deliberate indifference, Plaintiff suffered emotional distress and psychological damages, incurred medical expenses, suffered a loss of opportunity and the benefits of educational programs and activities, incurred other economic damages, and experienced ongoing pain and suffering.

WHEREFORE, Plaintiff prays that this Court enter judgment for the Plaintiff against each of the Defendants herein and grant relief as follows:

A.    A declaration that Defendants' conduct violated Plaintiff's rights under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.*, upon consideration of the evidence adduced at trial or otherwise;

B.    An injunction requiring Defendant Purdue to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs, to fully investigate conduct that may constitute sex-based harassment and/or sexual assault, to appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault, and to mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it;

C.    Award Plaintiff compensatory and consequential damages, including damages for pain and suffering, emotional distress, humiliation, loss of enjoyment of life, medical expenses, loss of educational opportunities, and all other economic losses and unreimbursed expenses on all claims allowed by law in an amount to be determined at trial or otherwise;

D.    Award Plaintiff economic losses on all claims permitted by law;

E.      Award Plaintiff special damages in an amount to be determined at trial or

otherwise;

F.      Award Plaintiff punitive damages on all claims as permitted by law against

individual Defendants and in an amount to be determined at trial or otherwise;

G.      Award Plaintiff attorneys' fees and the costs associated with this action, including

expert witness fees, as permitted by law;

H.      Award Plaintiff pre- and post-judgment interest as permitted by law; and

I.      Award any and all further relief as this Court deems appropriate and equitable,

including injunctive and injunctive and declaratory relief as may be required in the interests of

justice.

## COUNT III

**42 U.S.C. §1983 – Equal protection and due process violations as to Defendants Purdue University, Alysa Christmas Rollock, Katherine L. Sermersheim, Monica Bloom, Jacob Amberger, and Erin Oliver**

147.    Plaintiff incorporates and realleges by reference paragraphs 1 through 146 as if

they were fully set forth herein.

148.    Under the Fourteenth Amendment, Plaintiff has the right to personal security and

bodily integrity.

149.    Under the Fourteenth Amendment, Plaintiff has the well-established right to due

process and to equal protection of the laws.

150.    Under the Fourteenth Amendment, Plaintiff has the right to be free from gender

discrimination and harassment.

151.    Under the Fourteenth Amendment, Plaintiff has the right to equal access to an

educational environment free from gender discrimination and harassment.

152.     At all times relevant hereto, Defendants Rollock, Sermersheim, Amberger, and Oliver were state actors acting under the color of state law.

153.     Defendants Rollock, Sermersheim, Amberger, and Oliver each subjected Plaintiff to violations of her right to personal security and bodily integrity, her right to due process and equal protection of the laws, her right to be free from gender discrimination and harassment, and her right to equal access to an educational environment free from gender discrimination and harassment by:

    a.      Failing to adequately investigate Plaintiff's complaint in a timely and unbiased manner;

    b.      Failing to appropriately discipline Plaintiff's harasser;

    c.      Failing to reasonably accommodate Plaintiff even after having actual knowledge of the sexual assault;

    d.      Failing to provide Plaintiff with access to Jack Roe's second, significantly altered statement to investigators;

    e.      Failing to provide Plaintiff with access to the investigator's report prior to her final panel meeting;

    f.      Failing to provide Plaintiff with an opportunity to respond to Jack Roe's revised version of events;

    g.      Failing to inform Plaintiff of her right to be represented by counsel;

    h.      Failing to inform Plaintiff of her right to report the sexual assault to law enforcement;

    i.      Failing to assist Plaintiff in reporting the sexual assault to law enforcement;

    j.      Failing to address Plaintiff's concerns set forth in her appeal;

k.      Failing to conduct an unbiased investigation;

l.      Subjecting Plaintiff to gender-biased questioning throughout the reporting and investigation process, including without limitation advisements to Plaintiff that she needs to make better decisions when drinking, asking the Plaintiff about the content of text messages, asking the Plaintiff about her clothing, as well as other gender-biased and irrelevant inquiries and accusations;

m.      Manifesting deliberate indifference to Plaintiff's report of sexual assault; and

n.      Failing to intervene and to correct known discriminatory practices and constitutional violations committed by other co-defendants for the protection of the Plaintiff and other female students.

154.    Defendant Purdue has and/or had unconstitutional policies, practices, customs, and/or habits of:

a.      Failing to adequately investigate evidence of criminal and tortious misconduct committed against its students in violation of their right to equal access to an educational environment free from gender based discrimination and/or harassment;

b.      Failing to provide reporting students with an equal opportunity to be heard and equal access to the evidence and findings of its investigations;

c.      Failing to provide reporting students with a meaningful opportunity to appeal erroneous findings;

d.      Failing to provide reporting students with reasonable accommodations;

e.      Failing to advise reporting students of their legal rights, including the right to report to law enforcement and the right to be represented by counsel; and

f.      Failing to protect reporting students from discriminatory investigatory practices including without limitation gender-biased questioning, an unequal opportunity to review evidence, and an unequal opportunity to present evidence and otherwise present a complaint in an unbiased manner.

155.    On information and belief, Defendant Purdue University has followed these unconstitutional policies, practices, customs, and/or habits with regard not only to Plaintiff, but also with regard to other female students.

156.    Defendant Purdue's unconstitutional policies, practices, customs, and/or habits constitute disparate and discriminatory treatment and had a disparate impact on female students.

157.    Defendants Rollock, Sermersheim, Bloom, Amberger, and Oliver wer, at all times relevant hereto, policymakers with actual or delegated authority for the purpose of developing, implementing, and/or supervising Defendant Purdue's unconstitutional policies, practices, customs, and/or habits described herein.

158.    Each of the Defendants knew, or reasonably should have known, that their response to sexual assault allegations must comply with federal law, particularly Title IX, and the Fourteenth Amendment.

159.    As a direct and proximate result of Defendants' constitutional violations, Plaintiff suffered emotional distress and psychological damages, incurred medical expenses, suffered a loss of opportunity and the benefits of educational programs and activities, incurred other economic damages, and experienced ongoing pain and suffering.

WHEREFORE, Plaintiff prays that this Court enter judgment for the Plaintiff against each of the Defendants herein and grant relief as follows:

A.      A declaration that Defendants' conduct violated Plaintiff's rights under the Fourteenth Amendment to the Constitution of the United States of America in the manners alleged herein, upon consideration of the evidence adduced at trial or otherwise;

B.      An injunction requiring Defendant Purdue to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs, to fully investigate conduct that may constitute sex-based harassment and/or sexual assault, to appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault, and to mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it;

C.      Award Plaintiff compensatory and consequential damages, including damages for pain and suffering, emotional distress, humiliation, loss of enjoyment of life, medical expenses, loss of educational opportunities, and all other economic losses and unreimbursed expenses on all claims allowed by law in an amount to be determined at trial or otherwise;

D.      Award Plaintiff economic losses on all claims permitted by law;

E.      Award Plaintiff special damages in an amount to be determined at trial or otherwise;

F.      Award Plaintiff punitive damages on all claims as permitted by law against individual Defendants and in an amount to be determined at trial or otherwise;

G.      Award Plaintiff attorneys' fees and the costs associated with this action, including expert witness fees, as permitted by law;

H.      Award Plaintiff pre- and post-judgment interest as permitted by law pursuant to 42 U.S.C. §§1920 and 1988; and

I.      Award any and all further relief as this Court deems appropriate and equitable,

including injunctive and injunctive and declaratory relief as may be required in the interests of

justice.

## COUNT IV

**42 U.S.C. §1983 –** *Monell* **Liability for failure to train and supervise as to sexual assault allegations as to Defendants Purdue University, Mitchell Elias Daniels, Alysa Christmas Rollock, Katherine L. Sermersheim, and Monica Bloom**

160.    Plaintiff incorporates and realleges by reference paragraphs 1 through 159 as if

they were fully set forth herein.

161.    Under the Fourteenth Amendment, Plaintiff has the right to personal security and

bodily integrity.

162.    Under the Fourteenth Amendment, Plaintiff has the well-established right to due

process and to equal protection of the laws.

163.    Under the Fourteenth Amendment, Plaintiff has the right to be free from gender

discrimination and harassment.

164.    Under the Fourteenth Amendment, Plaintiff has the right to equal access to an

educational environment free from gender discrimination and harassment.

165.    At all times relevant hereto, Defendants Daniels, Rollock, Sermersheim, and

Bloom were state actors acting under the color of state law.

166.    Defendants Purdue, Daniels, Rollock, Sermersheim, and Bloom each subjected

Plaintiff to violations of her right to personal security and bodily integrity, her right to due

process and equal protection of the laws, her right to be free from gender discrimination and

harassment, and her right to equal access to an educational environment free from gender

discrimination and harassment by:

28

a.   Failing to adequately investigate Plaintiff's complaint in a timely and unbiased manner;

b.   Failing to appropriately discipline Plaintiff's harasser;

c.   Failing to reasonably accommodate Plaintiff even after having actual knowledge of the sexual assault;

d.   Failing to provide Plaintiff with access to Jack Roe's second, significantly altered statement to investigators;

e.   Failing to provide Plaintiff with access to the investigator's report prior to her final panel meeting;

f.   Failing to provide Plaintiff with an opportunity to respond to Jack Roe's revised version of events;

g.   Failing to inform Plaintiff of her right to be represented by counsel;

h.   Failing to inform Plaintiff of her right to report the sexual assault to law enforcement;

i.   Failing to assist Plaintiff in reporting the sexual assault to law enforcement;

j.   Failing to address Plaintiff's concerns set forth in her appeal;

k.   Failing to conduct an unbiased investigation;

l.   Subjecting Plaintiff to gender-biased questioning throughout the reporting and investigation process, including without limitation advisements to Plaintiff that she needs to make better decisions when drinking, asking the Plaintiff about the content of text messages, asking the Plaintiff about her clothing, as well as other gender-biased and irrelevant inquiries and accusations;

m.   Manifesting deliberate indifference to Plaintiff's report of sexual assault; and

29

      n.      Failing to intervene and to correct known discriminatory practices and constitutional violations committed by other co-defendants for the protection of the Plaintiff and other female students.

      167.    Defendant Purdue has and/or had unconstitutional policies, practices, customs, and/or habits of:

      a.      Failing to adequately investigate evidence of criminal and tortious misconduct committed against its students in violation of their right to equal access to an educational environment free from gender based discrimination and/or harassment;

      b.      Failing to provide reporting students with an equal opportunity to be heard and equal access to the evidence and findings of its investigations;

      c.      Failing to provide reporting students with a meaningful opportunity to appeal erroneous findings;

      d.      Failing to provide reporting students with reasonable accommodations;

      e.      Failing to advise reporting students of their legal rights, including the right to report to law enforcement and the right to be represented by counsel; and

      f.      Failing to protect reporting students from discriminatory investigatory practices including without limitation gender-biased questioning, an unequal opportunity to review evidence, and an unequal opportunity to present evidence and otherwise present a complaint in an unbiased manner.

      168.    On information and belief, Defendant Purdue University has followed these unconstitutional policies, practices, customs, and/or habits with regard not only to Plaintiff, but also with regard to other female students.

169.    Defendant Purdue's unconstitutional policies, practices, customs, and/or habits constitute disparate and discriminatory treatment and had a disparate impact on female students.

170.    Defendants Purdue, Daniels. Rollock, Sermersheim, and Bloom were, at all times relevant hereto, policymakers with actual or delegated authority for the purpose of developing, implementing, and/or supervising Defendant Purdue's unconstitutional policies, practices, customs, and/or habits described herein.

171.    Defendants Purdue, Daniels. Rollock, Sermersheim, and Bloom failed to preserve Plaintiff's constitutional rights to due process, equal protection, and equal access to an educational environment free from gender based discrimination and harassment by failing to adequately develop, promulgate, implement, and enforce constitutional policies, practices, customs, and/or habits in Purdue University's Center for Advocacy, Response, and Education and Purdue's Office of Institutional Equity.

172.    Defendants Purdue, Daniels. Rollock, Sermersheim, and Bloom failed to preserve Plaintiff's constitutional rights to due process, equal protection, and equal access to an educational environment free from gender based discrimination and harassment by failing to adequately train, supervise, and/or discipline employees to ensure compliance with policies, practices, customs, and/or habits in Purdue University's Center for Advocacy, Response, and Education and Purdue's Office of Institutional Equity.

173.    Each of the Defendants knew, or reasonably should have known, that their response to sexual assault allegations must comply with federal law, particularly Title IX, and the Fourteenth Amendment.

174.    As a direct and proximate result of Defendants' constitutional violations, Plaintiff suffered emotional distress and psychological damages, incurred medical expenses, suffered a

loss of opportunity and the benefits of educational programs and activities, incurred other economic damages, and experienced ongoing pain and suffering.

WHEREFORE, Plaintiff prays that this Court enter judgment for the Plaintiff against each of the Defendants herein and grant relief as follows:

A.    A declaration that Defendants' conduct violated Plaintiff's rights under the Fourteenth Amendment to the Constitution of the United States of America in the manners alleged herein, upon consideration of the evidence adduced at trial or otherwise;

B.    An injunction requiring Defendant Purdue to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs, to fully investigate conduct that may constitute sex-based harassment and/or sexual assault, to appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault, and to mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it;

C.    Award Plaintiff compensatory and consequential damages, including damages for pain and suffering, emotional distress, humiliation, loss of enjoyment of life, medical expenses, loss of educational opportunities, and all other economic losses and unreimbursed expenses on all claims allowed by law in an amount to be determined at trial or otherwise;

D.    Award Plaintiff economic losses on all claims permitted by law;

E.    Award Plaintiff special damages in an amount to be determined at trial or otherwise;

F.    Award Plaintiff punitive damages on all claims as permitted by law against individual Defendants and in an amount to be determined at trial or otherwise;

G.      Award Plaintiff attorneys' fees and the costs associated with this action, including expert witness fees, as permitted by law;

H.      Award Plaintiff pre- and post-judgment interest as permitted by law pursuant to 42 U.S.C. §§1920 and 1988; and

I.      Award any and all further relief as this Court deems appropriate and equitable, including injunctive and injunctive and declaratory relief as may be required in the interests of justice.

## **JURY DEMAND**

175.    Plaintiff demands a trial by jury in this action on each and every one of her claims.

Respectfully submitted this 12th day of January, 2018.


s/ John Mark Vouga_____                    s/ Andrew J. Spica_____
John Mark Vouga (#11754-64)                           Andrew J. Spica (#32157-64)
Attorney for Plaintiff                                Attorney for Plaintiff

John Mark Vouga (#11754-64)
Andrew J. Spica (#32157-64)
VOUGA & BARNES, LLC
3363 Willowcreek Road
Portage, IN 46368
(219) 763-0754
(219) 763-6529 (fax)
jmvouga@vougalawfirm.com
aspica@vougalawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 12th day of January, 2018, service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by depositing the same in the United States mail in envelopes properly addressed to each of them and with sufficient first class postage affixed.

By:＿＿＿ s/ Andrew J. Spica ＿＿＿＿＿＿＿＿