**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:17-CV-94-JVB-JEM |
| | ) | |
| PURDUE UNIVERSITY, MITCHELL ELIAS | ) | |
| DANIELS, ALYSA CHRISTMAS ROLLOCK, | ) | |
| KATHERINE L. SERMERSHEIM, MONICA | ) | |
| BLOOM, ERIN OLIVER, and JACOB | ) | |
| AMBERGER, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

<u>**SECOND AMENDED COMPLAINT**</u>

COMES NOW Plaintiff, Jane Doe, by and through counsel, Andrew J. Spica and John Mark Vouga, and hereby complains against the Defendants and requests a trial by jury as follows:

<u>**INTRODUCTION**</u>

1.      This cause of action arises from the Defendants' deliberately indifferent response to a student-on-student sexual assault on school premises.

2.      Defendants' failure to promptly and adequately respond to the assault subjected Plaintiff to a hostile educational environment, and it denied her equal access to educational opportunities and programs, based on her gender.

3.      Defendants' failure to promptly and adequately respond to the assault further denied Plaintiff of her constitutional right to due process, as she was denied the due process of law in the Defendants' inadequate investigation of, and inadequate response to, the assault.

4.      When Defendants did eventually respond, the investigation they conducted was biased against Plaintiff due to her gender.

5.      The outcome of the investigation was erroneous.

6.      This action alleges violations of the Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.* ("Title IX"), and 42 U.S.C. §1983, for the denial of due process and of the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States of America ("U.S. Constitution").

## JURISDICTION AND VENUE

7.      This action seeks to vindicate Plaintiff's rights under the Constitution and laws of the United States to due process, to equal protection of the laws, and to be free from gender discrimination in a federally funded educational program or activity, pursuant to both Title IX and the Fourteenth Amendment to the U.S. Constitution.

8.      Jurisdiction is conferred upon this court by 28 U.S.C. §§1331 and 1343, as this action seeks redress for violations of Plaintiff's rights under the Constitution and laws of the United States.

9.      Venue is proper to the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. §1391(b) and (c), as the judicial district in which all relevant events and omissions occurred, and in which at least one of the Defendants' maintains an office and resides.

## PARTIES

10.     At all times relevant hereto, Plaintiff Jane Doe was a student enrolled at Purdue University, a resident of the State of Indiana, and a citizen of the United States of America.

2

11.     At all times relevant hereto, Defendant Mitchell Elias Daniels was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the color of state law in his capacity as President of Purdue University, employed by Purdue University. On information and belief, Defendant Daniels exercised and/or delegated his final supervisory and/or decision-making power to Defendants Rollock, Sermersheim, Bloom, and others. Defendant Daniels also supervised and/or trained Defendants Rollock, Sermersheim, Bloom, Oliver, and Amberger. Defendant Daniels is sued in his individual and official capacities.

12.     At all times relevant hereto, Defendant Alyssa Christmas Rollock was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the color of state law in her capacity as Vice President of Ethics and Compliance at Purdue University, employed by Purdue University. On information and belief, Defendant Rollock exercised and/or delegated supervisory and/or final decision-making power delegated by Defendants Purdue University and Daniels. Defendant Rollock also supervised and/or trained Defendants Sermersheim, Bloom, Oliver, and Amberger. Defendant Rollock is sued in her individual and official capacities.

13.     At all times relevant hereto, Defendant Katherine L. Sermersheim was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the color of state law in her capacity as Dean of Students and Title IX Coordinator at Purdue University, employed by Purdue University. On information and belief, Defendant Sermersheim exercised and/or delegated supervisory and/or final decision-making power delegated by Defendants Purdue University, Daniels, and Rollock. Defendant Sermersheim also supervised

and/or trained Defendants Bloom, Oliver, and Amberger. Defendant Sermersheim is sued in her individual and official capacities.

14.     At all times relevant hereto, Defendant Monica Bloom was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the color of state law in her capacity as Title IX Coordinator, Director of the Center for Advocacy, Response, and Education, and Director of the Office of Institutional Equity at Purdue University, employed by Purdue University. On information and belief, Defendant Bloom exercised and/or delegated supervisory and/or final decision-making power delegated by Defendants Purdue University, Daniels, Rollock, and Sermersheim. Defendant Bloom also supervised and/or trained Defendants Oliver and Amberger. Defendant Bloom is sued in her individual and official capacities.

15.     At all times relevant hereto, Defendant Erin Oliver was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the color of state law in her capacity as Associate Director of the Office of Institutional Equity at Purdue University, employed by Purdue University. Defendant Oliver is sued in her individual and official capacities.

16.     At all times relevant hereto, Defendant Jacob Amberger was a resident of the State of Indiana, was a citizen of the United States of America, and was acting under the color of state law in his capacity as Investigator for the Office of Institutional Equity at Purdue University, employed by Purdue University. Defendant Amberger is sued in his individual and official capacities.

17.     At all times relevant hereto, Defendant Purdue University ("Defendant Purdue") was a state university authorized under the laws of the State of Indiana to maintain a public university, for which it bears ultimate responsibility. Defendant Purdue assumes risks incidental

4

to the maintenance and operation of a public university and the employment of agents within the university. Defendant Purdue is a recipient of federal funding and is subject to federal and constitutional law.

18.     At all times relevant hereto, Defendant Purdue, either directly or through powers delegated to its agents, hired, employed, trained, supervised, and controlled Defendants individually named herein.

19.     Defendants Daniels, Rollock, Sermersheim, Bloom, and Amberger are properly sued directly under 42 U.S.C. §1983 for their own deliberately indifferent, unconstitutional decisions, policies, practices, habits, customs, usages, training, supervision, ratification, actions, omissions, and intentional failures which resulted in the constitutional rights violations complained of herein.

## STATEMENT OF FACTS

20.     Plaintiff incorporates and realleges by reference paragraphs 1 through 19 as if they were fully set forth herein.

21.     On December 5, 2015, Plaintiff Jane Doe ("Plaintiff") was the victim of a sexual assault, perpetrated against her in her dormitory by another undergraduate student, Jack Roe.

22.     At all times relevant hereto, both Plaintiff and Jack Roe were enrolled as students at Purdue University ("Purdue").

23.     On December 5, 2015, Plaintiff attended an off-campus party located at Jack Roe's residence.

24.     The aforementioned party was sponsored, whether formally or informally, by members of Purdue University's Marching Band.

25.     At all times relevant hereto, Jack Roe was a prominent member of Purdue University's marching Band and a resident of the home that hosted the party on December 5, 2015.

26.     Following the Purdue University Marching Band Party on December 5, 2015, Jack Roe sexually assaulted Plaintiff.

27.      The following day, December 6, 2015, Plaintiff reported the sexual assault to her teammates on the Purdue University Crew Team.

28.     On December 7, 2015, Plaintiff visited the Purdue University Student Health Center ("PUSH").

29.     During her visit to PUSH on December 7, 2015, Plaintiff reported the sexual assault to an assistant nurse practitioner.

30.     On information and belief, the assistant nurse practitioner to whom Plaintiff reported her sexual assault was Cynthia Modlin Adams, A.N.P. ("Ms. Adams").

31.     At all times relevant hereto, Ms. Adams was employed by Purdue University and was acting within the scope of her employment.

32.     On information and belief, the report of sexual assault was also reviewed by nurse Karla Sigo, R.N. ("Ms. Sigo").

33.     At all times relevant hereto, Ms. Sigo was employed by Purdue University and was acted within the scope of her employment.

34.     In response to Plaintiff's report of being sexually assaulted, Ms. Adams told Plaintiff she needed to "make better decisions when she is drinking."

35.     Plaintiff was not intoxicated at the time of the assault.

36.     Ms. Adams's response to Plaintiff's report demonstrates a discriminatory attitude toward Plaintiff based on her gender and widespread gender stereotypes.

37.     Ms. Adams never reported the assault on the Plaintiff and never informed Plaintiff of alternate options for reporting the assault.

38.     On information and belief, Ms. Sigo reviewed Ms. Adams's notes, which included notations of Plaintiff's report that she had been sexually assaulted.

39.     Ms. Sigo failed to report the sexual assault or inform Plaintiff of other options for reporting the assault.

40.     Ms. Adams, Ms. Sigo, and Purdue University failed to provide Plaintiff with adequate health care following the reported sexual assault.

41.     At all times relevant hereto, Purdue University did not have, maintain, or refer Plaintiff to a rape crisis counseling center.

42.     At all times relevant hereto, each of Defendant Purdue's employees failed to offer, provide, or assist Plaintiff in obtaining the medical or psychological services she required following the sexual assault.

43.     On or about December 8, 2015, Plaintiff reported the sexual assault to an employee of McCutcheon Hall, whose identity is not known at this time.

44.     McCutcheon Hall is a residence hall located on Purdue University's campus. McCutcheon Hall is staffed, operated, and maintained by Purdue University.

45.     On information and belief, the residence hall employee to whom Plaintiff reported her sexual assault on or about December 8, 2015, created an incident report documenting the reported sexual assault.

46.     On information and belief, the residence hall employee to whom Plaintiff reported her sexual assault on or about December 8, 2015, failed to immediately report the sexual assault to Purdue University's Office of Institutional Equity.

47.     On information and belief, the residence hall employee to whom Plaintiff reported her sexual assault on or about December 8, 2015, failed to report the sexual assault to law enforcement.

48.     On information and belief, the residence hall employee to whom Plaintiff reported her sexual assault on or about December 8, 2015, failed to advise Plaintiff of her right to report the sexual assault to law enforcement and failed to offer to assist Plaintiff in such reporting.

49.     On December 9, 2015, Plaintiff was contacted by Kasey Richardson ("Ms. Richardson"), Assistant Director of Purdue University's Center for Advocacy, Response, and Education ("CARE").

50.     On information and belief, Plaintiff was never informed of her option to contact local police, was never offered any assistance in contacting law enforcement, and law enforcement was never notified of the attack by Ms. Richardson, the residence hall employee, Ms. Adams, Ms. Sigo, or any other employee of Purdue University with knowledge of the sexual assault.

51.     On December 9, 2015, Plaintiff advised Ms. Richardson that she was having difficulty focusing in her classes due to the emotional trauma she was suffering.

52.     Ms. Richardson advised Plaintiff to leave campus as quickly as possible.

53.     When Plaintiff attempted to leave campus prior to the conclusion of the Fall Semester 2015, she was denied academic accommodations with respect to at least one (1) of her classes.

54.    Plaintiff's grades during the Fall Semester 2015 suffered, as a result of Purdue University's failure to provide reasonable academic accommodations following the reported sexual assault.

55.    On February 1, 2016, Plaintiff contacted Ms. Richardson and requested assistance in filing a formal complaint with Purdue's Office of Institutional Equity ("OIE").

56.    For reasons unknown at this time, an investigation was not initiated by Purdue's Office of Institutional Equity until February 16, 2016, over two (2) weeks after Plaintiff's fourth report to employees of Purdue University.

57.    On or about February 16, 2016, Purdue's Dean of Students, Katherine Sermersheim ("Defendant Sermersheim"), assigned Jacob Amberger ("Defendant Amberger") and Erin Oliver ("Defendant Oliver") to investigate Plaintiff's formal complaint.

58.    In response to Plaintiff's complaint, Jack Roe submitted a written response to Defendant Amberger and Defendant Oliver.

59.    Jack Roe's first response to Defendant Amberger and Defendant Oliver denied material allegations included in Plaintiff's complaint to OIE.

60.    Plaintiff was subsequently permitted to review Jack Roe's first response.

61.    Plaintiff was also interviewed by Defendant Amberger and Defendant Oliver, and reaffirmed material allegations Jack Roe denied in his first response.

62.    Subsequently, Defendants Amberger and Oliver gathered additional evidence that corroborated material allegations Jack Roe had denied in his first response to Plaintiff's complaint with OIE.

63.    Subsequently, Jack Roe was asked to meet with Defendant Amberger and Defendant Oliver a second time.

64.     During his second meeting with Defendants Amberger and Oliver, Jack Roe was permitted to give a second response to Plaintiff's complaint with OIE before Defendants Amberger and Oliver prepared their investigators' report.

65.     Jack Roe's second statement consisted of a materially different version of events, and it retracted the previous denials of Plaintiff's material allegations that had subsequently been corroborated by independent evidence.

66.     Plaintiff was never informed during the investigation that Jack Roe had been interviewed for a second time.

67.     Plaintiff was never informed during the investigation that Jack Roe had given a second response to her complaint with OIE.

68.     Plaintiff was never given an opportunity during the investigation to respond to Jack Roe's second response to her complaint with OIE.

69.     On or about April 22, 2016, Plaintiff attended a final panel meeting to review her complaint.

70.     During the final panel meeting, Plaintiff was questioned by Defendant Sermersheim and three other faculty members, whose identities are not known at this time.

71.     During the final panel meeting, Plaintiff was treated as though she was to blame for the assault, and she was asked a series of questions demonstrating gender-based discrimination. The discriminatory questioning relied heavily on widespread gender-based stereotypes including, without limitation, questions as to what she was wearing the night of the assault, how much she had been drinking, whether she had a previous flirtatious relationship with Jack Roe, and other questions that sought to place blame on Plaintiff without any bearing on the issue of consent.

72.     At all stages of Purdue University's investigation, final panel hearing, and appeal, Plaintiff was discriminated against due to her gender.

73.     The gender discrimination against Plaintiff is clearly demonstrated by the comments, questioning, attitudes, and conclusions of Defendants Amberger, Oliver, Sermersheim, Rollock, and Daniels stated herein, and those discovered in the prosecution of Plaintiff's claims, that rely on widespread gender-based stereotypes without having any bearing on, or relevance to, the issue of consent.

74.     The report submitted by Defendant Amberger and Defendant Oliver erroneously concludes that Jack Roe did not violate Purdue University's anti-harassment Policy.

75.     Purdue University's response, and lack thereof, to Plaintiff's report of sexual assault was deliberately indifferent to sexual assault committed against Plaintiff.

76.     Purdue's investigation discriminated against Plaintiff based her gender, by presuming that Plaintiff somehow invited Jack Roe's assault through prior, irrelevant acts and/or omissions based on gender stereotypes.

77.     Ultimately, from the moment Plaintiff report to PUSH, to the moment Defendants Amberger, Oliver, and Sermersheim made their findings, Plaintiff was blamed for the sexual assault she suffered on December 5, 2015 because of her gender.

78.     On May 2, 2016, Defendant Sermersheim found that Jack Roe had not violated Purdue University's anti-harassment policy.

79.     On May 5, 2016, for the first time, Plaintiff was permitted to review the report created by Defendant Amberger and Defendant Oliver.

80.     On May 5, 2016, for the first time, Plaintiff was made aware that Jack Roe had given a second statement to Defendant Amberger and Defendant Oliver.

81.     Plaintiff was never given notice that Jack Roe had submitted a revised statement to the investigators.

82.     Plaintiff was never given an opportunity to review, address, challenge, or respond to Jack Roe's revised version of events.

83.     Plaintiff was never given an opportunity to review the investigator's report prior the panel meeting, which was her final opportunity to be heard.

84.     At all stages of the investigation, Plaintiff was denied equal access to the information collected by Defendants Amberger and Oliver.

85.     At all stages of the investigation, Plaintiff was denied due process, a meaningful opportunity to view and respond to the evidence, and a meaningful opportunity to be heard.

86.     On or about May 12, 2016, Plaintiff submitted an appeal to Purdue's Vice President of Ethics and Compliance, Alysa Christmas Rollock ("Defendant Rollock").

87.     Plaintiff's appeal included a detailed response to Jack Roe's newly discovered, second story concerning what occurred on the night of the assault.

88.     Plaintiff's appeal detailed the problems in the underlying investigation, including the clear gender bias demonstrated by Defendants Adams, Amberger, Oliver, and Sermersheim.

89.     Plaintiff's appeal addressed the bias she faced from the final panel in the form of the accusatory questions she was asked.

90.     Plaintiff further notified Defendant Rollock that she was afraid to participate in the Marching Band due to ongoing concerns over Jack Roe's continued involvement, despite his graduation.

91.     Plaintiff's appeal additionally outlined of a lack of communication from OIE regarding the progress and timeline of the investigation.

92.     Plaintiff was told to expect a determination on her appeal within ten (10) days from the date her appeal was submitted.

93.     On May 24, 2016, Plaintiff contacted Defendant Rollock by e-mail, inquiring as to whether there was a determination regarding her appeal. Defendant Rollock did not respond.

94.     On May 25, 2016 Plaintiff again contacted Defendant Rollock by e-mail, inquiring as to whether there was a determination regarding her appeal. Defendant Rollock did not respond.

95.     On May 26, 2016, Plaintiff contacted Purdue University President, Mitchell Elias Daniels ("Defendant Daniels"), outlined her complaints relating to the Office of Institutional Equity, the bias she faced from Defendants Amberger, Oliver, and Sermersheim, and the lack of response form Defendant Rollock.

96.     Defendant Daniels never responded to Plaintiff's complaint.

97.     On May 27, 2016, Defendant Rollock issued a determination denying Plaintiff's appeal.

98.     Defendant Rollock failed to address any of Plaintiff's substantive concerns in her determination.

99.     Defendant Rollock summarily denied Plaintiff's appeal, and failed to address, correct, or explain the numerous issues raised therein.

100.    During the investigation, Plaintiff advised Defendant Richardson that she was having difficulty with her academics due to the emotional trauma of the assault and the investigation.

101.    During the investigation, Plaintiff requested academic accommodations to assist with the difficulty she was having,

102.    Plaintiff was denied the academic accommodations she requested.

103.    During the investigation, Plaintiff reported to Defendant Richardson that she was having financial difficulties due to a bill she was receiving from the hospital in connection with the underlying assault.

104.    Defendant Richardson advised Plaintiff she would receive assistance from Purdue University in paying for her hospital expenses.

105.    Despite her request for accommodation, Plaintiff never received assistance from Purdue in paying for her medical expenses incurred following this assault.

106.    During the investigation and afterwards, Plaintiff informed Defendant Richardson that she felt excluded from Purdue's marching band due to Jack Roe's continued involvement, despite the fact he was a graduating senior.

107.    Jack Roe was, at all times relevant hereto, a leader in Purdue's Marching band, as the band's drum major.

108.    Purdue's Marching Band has a custom of allowing former band members to return to assist with the Marching band even after they have graduated.

109.    Jack Roe's continued involvement in the Marching band, both during the 2015-2016 academic school year and beyond Jack Roe's graduation, effectively excluded Plaintiff from participation in the marching band.

110.    Plaintiff expressed her feeling of exclusion from the Marching Band to Defendant Richardson.

111.    Purdue University made no accommodations to assist Plaintiff in participating in the Marching Band, as had been her longtime aspiration.

112.    At all times relevant hereto, Defendant Richardson was assigned to Plaintiff as her victim's advocate. Accordingly, all accommodation requests made to Defendant Richardson were simultaneously made to Purdue University.

113.    During the Fall Semester 2016, after Jack Roe had graduated, Plaintiff attended a job fair on campus through Purdue's engineering program where she encountered Jack Roe, who had graduated the previous semester.

114.    Plaintiff's emotional trauma was relived, and she had to leave the job fair and forego the opportunities at said job fair.

115.    Prior to the job fair, Plaintiff had repeatedly expressed her fear of Jack Roe's continued presence on campus to Defendants Richardson and Rollock.

116.    Following Jack Roe's graduation, Defendants failed to take reasonable steps to accommodate Plaintiff through reasonable efforts to limit contact between Plaintiff and Jack Roe.

117.    As a proximate result of the Defendants' deliberate indifference to Jack Roe's sexual assault of Plaintiff, Plaintiff has suffered, and continues to suffer, damages including, without limitation, medical expenses, physical pain and suffering, emotional pain and suffering, lost educational opportunities, diminished academic performance, lost scholarships, and a diminished quality of life.

## COUNT I

**20 U.S.C. §1681, *et seq*. – Title IX violation as to Defendant Purdue University for the school's deliberate indifference to sexual harassment**

118.    Plaintiff incorporates and realleges by reference paragraphs 1 through 117 as if they were fully set forth herein.

119.    The sexual harassment reported by Plaintiff and articulated herein was so severe, pervasive, and objectively offensive that it deprived Plaintiff of equal access to educational opportunities and programs and the benefits of such opportunities and programs.

120.    Defendant Purdue University created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX because:

a.      Plaintiff was a member of a protected class;

b.      Defendant Purdue had substantial control over the harasser, who was a student enrolled at Purdue University;

c.      Defendant Purdue had substantial control over the context in which the harassment occurred, as the harassment occurred on campus in McCutcheon Hall;

d.      Plaintiff was subjected to sexual harassment that was so severe, pervasive, and objectively offensive that it deprived Plaintiff of equal access to educational opportunities and programs;

e.      Plaintiff was subjected to harassment based on her sex; specifically, sexual harassment in the form of a sexual assault;

f.      Defendant Purdue had actual knowledge of the harassment through Plaintiff's report to three (3) of Defendant Purdue's employees between December 7, 2015 and December 9, 2015;

g.      Defendant Purdue failed to initiate an investigation into the sexual assault until February 16, 2016;

h.      Defendant Purdue failed to extend reasonable accommodations, including academic accommodations and medical care, to Plaintiff following her report of being sexually assaulted;

16

i.    Defendant Purdue's investigation and resolution of Plaintiff's complaint unfairly favored Plaintiff's assailant;

j.    Defendant Purdue's unfair treatment of Plaintiff during the investigation and resolution of her complaint was based on Plaintiff's gender, as demonstrated by the attitudes, statements, and actions of Purdue's employees during the investigation and resolution of Plaintiff's complaint; and

k.    Defendant Purdue was deliberately indifferent to the known sexual harassment by its initial failure to respond and provide reasonable accommodations and medical care, and subsequently by its discriminatory investigation and continuing failure to provide reasonable accommodations.

121.   By December 9, 2015, at least three (3) school employees who had a duty to respond to the sexual harassment and/or institute corrective measures had actual knowledge of the harassment and failed to adequately respond.

122.   Defendant Purdue was deliberately indifferent by failing to extend Plaintiff reasonable accommodations including, without limitation, medical attention, counseling, academic accommodations, and/or reasonable restrictions on contact between the Plaintiff and her harasser after her harasser had graduated.

123.   Defendant Purdue was deliberately indifferent by its failure to investigate and appropriately discipline Plaintiff's attacker in a timely manner and consistent with its own policies and procedures promulgated under federal law.

124.   The sexual assault Plaintiff suffered, and Defendant Purdue's deliberate indifference to said assault, proximately caused her to be excluded from participation in, and to be denied the benefits of, an educational program and activities in violation of Title IX.

125.    At all times relevant hereto, Defendant Purdue was a recipient of federal funding and was obligated to comply with the requirements of Title IX.

126.    Defendant Purdue persisted in its deliberately indifferent actions and inaction well after it had actual Defendant Purdue did not have adequate personnel and/or facilities in place to adequately respond to the sexual assault against Plaintiff in a timely manner. Plaintiff was forced to seek medical attention and rape crisis counseling off campus, as Defendant Purdue did not have appropriate services and/or personnel in place for victims of sexual assault.

127.    Even after Defendant Purdue had actual knowledge of the sexual assault against Plaintiff, it failed to reasonably assist Plaintiff in obtaining medical attention, rape crisis counseling, and/or securing reasonable and necessary academic accommodations.

128.    Defendant Purdue's failure to adequately respond to the sexual assault against Plaintiff and/or to provide reasonable accommodations resulted in harm to the Plaintiff as her grades suffered, her medical and psychological care was unreasonably delayed, and the investigation into her allegations was unreasonably delayed.

129.    Defendant Purdue's lack of appropriate facilities and/or personnel, and its failure to adequately respond to Plaintiff's complaint of sexual assault in a timely manner further demonstrate its deliberate indifference to Plaintiff's complaint of sexual assault.

130.    Defendant Purdue persisted in its deliberately indifferent actions and inaction well after it had actual knowledge of the sexual harassment and harm suffered by Plaintiff. knowledge of the sexual harassment and harm suffered by Plaintiff.

131.    As a direct and proximate result of Defendant Purdue's deliberate indifference, Plaintiff suffered emotional distress and psychological damages, incurred medical expenses,

suffered a loss of opportunity and the benefits of educational programs and activities, incurred

other economic damages, and experienced ongoing pain and suffering.

WHEREFORE, Plaintiff prays that this Court enter judgment for the Plaintiff against

each of the Defendants herein and grant relief as follows:

A.      Award Plaintiff compensatory and consequential damages, including damages for

pain and suffering, emotional distress, humiliation, loss of enjoyment of life, medical expenses,

loss of educational opportunities, and all other economic losses and unreimbursed expenses on

all claims allowed by law in an amount to be determined at trial or otherwise;

B.      Award Plaintiff economic losses on all claims permitted by law;

C.      Award Plaintiff special damages in an amount to be determined at trial or

otherwise;

D.      Award Plaintiff punitive damages on all claims as permitted by law against

individual Defendants and in an amount to be determined at trial or otherwise;

E.      Award Plaintiff attorneys' fees and the costs associated with this action, including

expert witness fees, as permitted by law;

F.      Award Plaintiff pre- and post-judgment interest as permitted by law; and

G.      Award any and all further relief as this Court deems appropriate and equitable,

including injunctive and injunctive and declaratory relief as may be required in the interests of

justice.

### <u>COUNT II</u>

**20 U.S.C. §1681, *et seq*. – Title IX violation as to Defendant Purdue University for an
erroneous outcome arising from gender bias in Defendant Purdue's investigation**

132.    Plaintiff incorporates and realleges by reference paragraphs 1 through 131 as if

they were fully set forth herein.

133.    The sexual harassment reported by Plaintiff and articulated herein was so severe, pervasive, and objectively offensive that it deprived Plaintiff of equal access to educational opportunities and programs and the benefits of such opportunities and programs.

134.    The sexual harassment Plaintiff suffered was based on her gender.

135.    The outcome of Defendant Purdue University's investigation proceedings and resolution of Plaintiff's Complaint is erroneous, in violation of Title IX because:

a.    Jack Roe's first response to Plaintiff's complaint contained denials of material allegations in Plaintiff's complaint that were subsequently corroborated by independent evidence;

b.    After receiving independent evidence that corroborated the material allegations of Plaintiff's complaint that were initially denied by Jack Roe, Defendant Purdue permitted Jack Roe to materially revise his statement in response to Plaintiff's allegations;

c.    Plaintiff was never advised of Jack Roe's second response prior to the final hearing on her complaint;

d.    Plaintiff was never permitted to respond to Jack Roe's second response prior to the final hearing on her complaint;

e.    Plaintiff was never permitted to review the investigator's report prior to the final hearing on her complaint;

f.    Plaintiff was never given an opportunity to present additional evidence in response to Jack Roe's second response to her complaint before or during the final hearing on her complaint; and

g.    Defendant Purdue failed to address the procedural deficiencies raised by Plaintiff in her appeal of the erroneous resolution of her complaint.

136.    The erroneous outcome of Defendant Purdue University's investigation and resolution of Plaintiff's complaint was motivated, at least in part, by gender bias against the Plaintiff. The circumstances suggesting gender bias against Plaintiff during the investigation and resolution of her complaint include, without limitation, the following:

a.    Plaintiff and Jack Roe were similarly situated with respect to the investigation and resolution of Plaintiff's complaint as opposing parties;

b.    Jack Roe was given numerous opportunities to present additional evidence, alter his statements relating to the incident prior to the conclusion of the investigation and final hearing on Plaintiff's complaint;

c.    Plaintiff was denied an opportunity to review and respond to evidence and statements provided by Jack Roe prior to the conclusion of the investigation and final hearing on Plaintiff's complaint;

d.    Plaintiff was subjected to questioning, irrelevant to the ultimate issue of consent, during the course of the investigation and final hearing on her complaint that suggests the influence of gender bias amongst the investigators and final hearing panel members. The questioning included, without limitation, questions about the Plaintiff's clothing, questions about the Plaintiff's alleged intoxication, and questions about an alleged prior flirtatious relationship with Jack Roe;

e.    Jack Roe was not similarly subjected to questioning irrelevant to the ultimate issue of consent; and

      f.      Defendant Purdue University's investigators and final hearing panel relied on Plaintiff's responses to the foregoing gender biased questions in erroneously resolving Plaintiff's sexual assault complaint.

137.     At all times relevant hereto, Defendant Purdue was a recipient of federal funding and was obligated to comply with the requirements of Title IX.

138.     Defendant Purdue engaged in a pattern and practice of behavior designed to favor Plaintiff's attacker, thereby discouraging Plaintiff and other female students from seeking prosecution and further investigation of sexual assaults.

139.     Defendant Purdue's policies, habits, customs, and/or practices constituted disparate treatment of Plaintiff and other female students.

140.     As a direct and proximate result of Defendant Purdue's erroneous resolution of her complaint, Plaintiff suffered emotional distress and psychological damages, incurred medical expenses, suffered a loss of opportunity and the benefits of educational programs and activities, incurred other economic damages, and experienced ongoing pain and suffering.

WHEREFORE, Plaintiff prays that this Court enter judgment for the Plaintiff against each of the Defendants herein and grant relief as follows:

A.      Award Plaintiff compensatory and consequential damages, including damages for pain and suffering, emotional distress, humiliation, loss of enjoyment of life, medical expenses, loss of educational opportunities, and all other economic losses and unreimbursed expenses on all claims allowed by law in an amount to be determined at trial or otherwise;

B.      Award Plaintiff economic losses on all claims permitted by law;

C.      Award Plaintiff special damages in an amount to be determined at trial or otherwise;

D.      Award Plaintiff punitive damages on all claims as permitted by law against

individual Defendants and in an amount to be determined at trial or otherwise;

E.      Award Plaintiff attorneys' fees and the costs associated with this action, including

expert witness fees, as permitted by law;

F.      Award Plaintiff pre- and post-judgment interest as permitted by law; and

G.      Award any and all further relief as this Court deems appropriate and equitable,

including injunctive and injunctive and declaratory relief as may be required in the interests of

justice.

## COUNT III

**42 U.S.C. §1983 – Equal protection violation as to Defendants Mitchell Elias Daniels, Alysa Christmas Rollock, Katherine L. Sermersheim, Monica Bloom, Jacob Amberger, and Erin Oliver**

141.    Plaintiff incorporates and realleges by reference paragraphs 1 through 140 as if

they were fully set forth herein.

142.    Under the Fourteenth Amendment, Plaintiff has the right to equal protection of

the laws.

143.    Under the Fourteenth Amendment, Plaintiff has the right to be free from gender

discrimination and harassment.

144.    At all times relevant hereto, Defendants Rollock, Sermersheim, Amberger, and

Oliver were state actors acting under the color of state law.

145.    At all times relevant hereto, Plaintiff was similarly situated to Jack Roe with

respect to the investigation and resolution of Plaintiff's sexual assault complaint.

146.     Despite being similarly situated to the Plaintiff, Jack Roe received preferential treatment by Defendants Amberger, Oliver, and Sermersheim throughout the investigation and resolution of Plaintiff's sexual assault complaint.

147.     There is no rational basis for the difference in treatment of Jack Roe and Plaintiff.

148.     The difference in treatment of Jack Roe and Plaintiff was motivated by gender bias against Plaintiff, as demonstrated without limitation by the following disparities in treatment:

a.      Jack Roe's first response to Plaintiff's complaint contained denials of material allegations in Plaintiff's complaint that were subsequently corroborated by independent evidence;

b.      After receiving independent evidence that corroborated the material allegations of Plaintiff's complaint that were initially denied by Jack Roe, Defendant Purdue permitted Jack Roe to materially revise his statement in response to Plaintiff's allegations;

c.      Plaintiff was never advised of Jack Roe's second response prior to the final hearing on her complaint;

d.      Plaintiff was never permitted to respond to Jack Roe's second response prior to the final hearing on her complaint;

e.      Plaintiff was never permitted to review the investigator's report prior to the final hearing on her complaint;

f.      Plaintiff was never given an opportunity to present additional evidence in response to Jack Roe's second response to her complaint before or during the final hearing on her complaint; and

g.    Defendant Purdue failed to address the procedural deficiencies raised by Plaintiff in her appeal of the erroneous resolution of her complaint.

h.    Jack Roe was given numerous opportunities to present additional evidence, alter his statements relating to the incident prior to the conclusion of the investigation and final hearing on Plaintiff's complaint;

i.    Plaintiff was denied an opportunity to review and respond to evidence and statements provided by Jack Roe prior to the conclusion of the investigation and final hearing on Plaintiff's complaint;

j.    Plaintiff was subjected to questioning, irrelevant to the ultimate issue of consent, during the course of the investigation and final hearing on her complaint that suggests the influence of gender bias amongst the investigators and final hearing panel members. The questioning included, without limitation, questions about the Plaintiff's clothing, questions about the Plaintiff's alleged intoxication, and questions about an alleged prior flirtatious relationship with Jack Roe;

k.    Jack Roe was not similarly subjected to questioning irrelevant to the ultimate issue of consent; and

l.    Defendant Purdue University's investigators and final hearing panel relied on Plaintiff's responses to the foregoing gender biased questions in erroneously resolving Plaintiff's sexual assault complaint.

149.    Defendants Rollock, Sermersheim, Amberger, and Oliver each subjected Plaintiff to violations of her right to equal protection of the laws and her right to be free from gender discrimination and harassment giving Jack Roe preferential treatment and discriminating against the Plaintiff due to her gender as set forth above.

25

150.     Defendants Amberger, Oliver, and Sermersheim directly engaged in discriminatory conduct against Plaintiff during the course of the investigation and resolution of her sexual assault complaint, as set forth herein,

151.     Defendants Daniels, Rollock, and Bloom each had direct and actual knowledge of Plaintiff's sexual assault complaint.

152.     Defendants Daniels, Rollock, and Bloom each had direct and actual knowledge of Plaintiff's appeal of Purdue University's erroneous determination, including Plaintiff's complaint of bias, disparate treatment, procedural deficiencies, and gender discrimination.

153.     Defendants Daniels, Rollock, and Bloom each acquiesced in the disparate treatment of Plaintiff based on her gender by failing to respond and correct the disparate treatment of Plaintiff.

154.     At all times relevant hereto, Defendants Daniels, Rollock, Bloom, and Sermersheim were policymakers with actual or delegated authority for the purpose of developing, implementing, and/or supervising Defendant Purdue's investigation of student complaints of sexual assault.

155.     Each of the Defendants knew, or reasonably should have known, that their response to sexual assault allegations must comply with federal law, particularly Title IX, and the Fourteenth Amendment.

156.     None of the parties individually named herein have immunity from suit in their individual capacities.

157.     As a direct and proximate result of Defendants' constitutional violations, Plaintiff suffered emotional distress and psychological damages, incurred medical expenses, suffered a

loss of opportunity and the benefits of educational programs and activities, incurred other economic damages, and experienced ongoing pain and suffering.

WHEREFORE, Plaintiff prays that this Court enter judgment for the Plaintiff against each of the Defendants herein and grant relief as follows:

A.    Award Plaintiff compensatory and consequential damages, including damages for pain and suffering, emotional distress, humiliation, loss of enjoyment of life, medical expenses, loss of educational opportunities, and all other economic losses and unreimbursed expenses on all claims allowed by law in an amount to be determined at trial or otherwise;

B.    Award Plaintiff economic losses on all claims permitted by law;

C.    Award Plaintiff special damages in an amount to be determined at trial or otherwise;

D.    Award Plaintiff punitive damages on all claims as permitted by law against individual Defendants and in an amount to be determined at trial or otherwise;

E.    Award Plaintiff attorneys' fees and the costs associated with this action, including expert witness fees, as permitted by law;

F.    Award Plaintiff pre- and post-judgment interest as permitted by law pursuant to 42 U.S.C. §§1920 and 1988; and

G.    Award any and all further relief as this Court deems appropriate and equitable, including injunctive and injunctive and declaratory relief as may be required in the interests of justice.

## **JURY DEMAND**

158.    Plaintiff demands a trial by jury in this action on each and every one of her claims.

27

Respectfully submitted this 30th day of July, 2018.


s/ John Mark Vouga_____                    s/ Andrew J. Spica_____
John Mark Vouga (#11754-64)                           Andrew J. Spica (#32157-64)
Attorney for Plaintiff                                Attorney for Plaintiff

John Mark Vouga (#11754-64)
Andrew J. Spica (#32157-64)
VOUGA & BARNES, LLC
6534 American Way
Portage, IN 46368
(219) 763-0754
(219) 763-6529 (fax)
jmvouga@vougalawfirm.com
aspica@vougalawfirm.com